Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| ARIANE ROWLAND, and JAMIE SCHULZE<br><br>Plaintiff,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff, Ariane Rowland ("Rowland") and Jamie Schulze ("Schulze"), by and through undersigned counsel, and for their causes of action and claims for relief against the Defendants, state and allege as follows:

///

## I. PARTIES, JURISDICTION & VENUE

1. Rowland is a citizen and resident of Rosebud County, Montana.

2. Schulze is a citizen and resident of Taos County, New Mexico.

3. During all times relevant, Defendant Watchtower Bible and Tract Society of New York, Inc. ("Watchtower NY") is and was a New York corporation conducting business in the State of Montana, with its principal place of business in New York.

4. During all times relevant, Defendant Watch Tower Bible and Tract Society of Pennsylvania Inc. ("Watchtower PA") is and was a Pennsylvania corporation conducting business in the State of Montana, with its principal place of business in New York.

5. During all times relevant, the events and claims described in this Complaint occurred in Big Horn County, Montana.

6. This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 due to the diversity of citizenship of the parties hereto, and by virtue of the fact that the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

7. This Court may properly maintain personal jurisdiction over Watchtower NY and Watchtower PA because they are business entities operating in the State of Montana and this judicial district who's acts and omissions resulted

in the accrual of the tort actions plead below, were directly involved in the acts and omissions at issue in this case, and their presence in and contacts with the State of Montana and this judicial district are sufficient to support an exercise of jurisdiction that comports with traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## II. FACTS COMMON TO ALL CLAIMS

At all times relevant to the claims made herein:

9. The Jehovah's Witness Church ("Church") is structured hierarchically.

10. Watchtower NY is the head of the religion and the Church and exercises control of the Church and the operation of local congregations.

11. New members of the Church are given the title of Unbaptized Publisher.

12. Unbaptized Publishers can be promoted sequentially to Baptized Publisher, Ministerial Servant, and finally, Elder.

13. In each promotion, the local congregation recommends members for promotion, and Watchtower NY ultimately decides whether to promote a member after vetting the member.

Complaint and Jury Demand
Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.
3

14. Baptized Publishers, Ministerial Servants, and Elders are all agents of their local congregation and Watchtower NY and PA.

15. Watchtower PA is the publishing wing of the Church, responsible for creating and transmitting church policy and doctrine to local congregations and members.

16. The Church, through Watchtower NY and Watchtower PA, instructs its members to report wrongdoing to their local Elders, rather than reporting such conduct to law enforcement.

17. The Church, through Watchtower NY and Watchtower PA, controls how allegations of child sexual abuse committed by church members are handled.

18. The Church, through Watchtower NY and Watchtower PA, instructs and commands its local congregations to not report child sexual abuse to law enforcement or child protective services.

19. Instead of allowing law enforcement to investigate and prosecute allegations of child sexual abuse by church members, the Church, through Watchtower NY and Watchtower PA, has adopted its own process for the investigation, prosecution, and punishment of church members that are accused of sexual abuse (the "Watchtower Protocols").

20. Records of Watchtower's Protocols are maintained by both the local congregation and Watchtower NY.

21. Pursuant to the Watchtower Protocols, when a local congregation's Elders determine that allegations of sexual abuse are true, they are instructed to not report it to law enforcement and thereby keep it secret.

22. Pursuant to the Watchtower Protocols, when a local congregation's Elders determine that allegations of sexual abuse are true, they institute one of three types of punishment: private reproof, public reproof, or disfellowship.

23. Pursuant to the Watchtower Protocols, when a local congregation's Elders determine that allegations of sexual abuse are true the Elders merely announce to the local congregation that the member is being punished, without telling the local members what the punishment is for or warning its members that the person being punished is a sexual abuser.

24. Pursuant to the Watchtower Protocols, when a local congregation's Elders determine that allegations of sexual abuse are true, Watchtower NY permits the sexual abuser to rejoin the church without restrictions or warnings to others.

25. Watchtower's Protocols have been instituted by Watchtower NY and Watchtower PA to supplant the mandatory reporting requirements of Montana with its own policy of secrecy of, and tolerance for, child sexual abuse.

26. By prohibiting church members from reporting sexual abuse to law enforcement and enacting its own Watchtower Protocols, Watchtower NY and Watchtower PA have accepted the unique and special responsibility of protecting minors from sexual predators.

27. The Watchtower Protocols is intended to protect the reputation of the church rather than protect people from sexual predators.

28. The Watchtower Protocols fails to take any reasonable steps to protect its members and members of the public, including Plaintiffs, from child sexual abuse.

29. The Watchtower Protocols' published materials instructing Church members to not report child abuse to law enforcement effectively protecting sexual predators and fostering an environment within the Church that encouraged childhood sexual abuse without consequence.

30. Rowland and Schulze are sisters.

31. Rowland's and Schulze's grandparents, Quintin and Nellie Means, began sexually abusing Rowland in or around 1979 when she was under one year old and continued until 1990 and began sexually abusing Schulze in or around 1976 when she was approximately three years old and continued until 1986.

32. Such abuse generally consisted of forced vaginal penetration with fingers and foreign objects such as mixing spoons.

33. During this time, Quintin Means was an elder of the Hardin Congregation of Jehovah Witnesses ("Hardin Congregation").

34. Gunner Haines ("Haines") and his first wife Joyce began sexually abusing Rowland in or around 1983 when she was five years old and continued until in or around 1988 and began sexually abusing Schulze in or around 1984 and continued until in or around 1986.

35. Such abuse generally consisted of forced penetration with fingers, forcing Rowland and Schulze to sexually abuse other children, and forcing other children to sexually abuse Rowland and Schulze.

36. During this time, Haines was a ministerial servant of the Hardin Congregation.

37. Jim Warnock ("Warnock") sexually abused Rowland in or around 1983 when she was five years old after she walked in on him abusing his own daughters.

38. During this time, Warnock was an elder of the Hardin Congregation.

39. Martin Svensen and his wife Millie ("Svensens") began sexually abusing Rowland in or around 1986 when she was eight years old and continued until in or around 1988.

40. The Svensens began sexually abusing Schulze in or around 1977 when she was four years old and continued until in or around 1985.

41. Such abuse generally consisted of ritualistic torture, forced anal and vaginal penetration with foreign objects, vaginal and anal rape, and forced oral penetration.

42. During this time, Martin Svensen was an elder of the Hardin Congregation.

43. In or around 1979, the Svensens built a new house with a room in the basement dedicated to sexually abusing children, including Rowland and Schulze.

44. From 1979 to 1985, Schulze was sexually abused by the following people in the Svensens' basement: Bruce Mapley Sr. ("Mapley Sr."), Warnock, Gary Baker ("Baker"), Jay Donavan ("Donavan"), Dale Hiebert ("Hiebert"), and Bill O'Neil ("O'Neil").  *See* Aff. of James Rowland, ¶ 4, April 14, 2020 (attached as **Exhibit A**).

45. Such abuse consisted of forcing Schulze to ingest alcohol and/or drugs and subjecting her to various acts of sexual abuse and ritualistic torture.

46. During this time, Mapley Sr., Warnock, Baker, Donavan, Hiebert, and O'Neil were elders of the Hardin Congregation.

47. Prior to Haines and Mapley Sr. sexually abusing Plaintiffs, in or around 1977, Haines and Mapley Sr. both admitted to the Church that they had

sexually abused other children.  Aff. of Shirley Gibson, ¶ 4, March 26, 2020 (attached as **Exhibit B**).

48. Pursuant to the Watchtower Protocols, Mapley Sr.'s and Haines' serial sexual abuse was minimized and their punishment was negligible, which merely consisted of the Elders announcing to the Hardin Congregation that the men had committed a wrongdoing, without disclosing any details of the wrongdoing, and temporarily relieving the men of their positions and duties in the Church.  **Ex. B** at ¶ 6.

49. Pursuant to the Watchtower Protocols, and within a year of having admitted to sexually abusing children, Mapley Sr. and Haines were permitted to rejoin the Church in positions of authority, and as agents and representatives of the church.  **Ex. B** at ¶ 6.

50. Thereafter, and because the Watchtower Protocols protects sexual predators, Mapley Sr. and Haines were permitted by the Church to sexually abuse Plaintiffs.

51. In 1986, Rowland disclosed the Svensens', the Means', and the Haines' sexual abuse to her father, James Rowland.

52. James Rowland as an elder at the Hardin Congregation at the time.

53. In or around 1987, Schulze disclosed the sexual abuse she had been suffering at the hands of the Church's elders to a Circuit Overseer named Brother Polkowski.

54. Instead of helping Schulze or investigating the widespread child sexual abuse, the Church actively took steps to silence, discredit, and embarrass her and to dissuade other victims from coming forward.

55. Schulze later disclosed the sexual abuse she suffered at the hands of the Church's elders to an elder of the Forsyth Congregation of Jehovah's Witnesses, Kenneth Pratts ("Pratts").

56. Pratts stated he and the Church would handle the situation but failed to take any steps to end the abuse.

57. At all times relevant, the Svensens, the Haines, the Means, Mapley Sr., Warnock, Baker, Donavan, Hiebert, and O'Neil were agents of Watchtower NY and Watchtower PA.

58. Pursuant to the Watchtower Protocols, the elders' serial sexual abuse of Plaintiffs was minimized and/or completely disregarded.

59. Pursuant to the Watchtower Protocols, none of the Defendants, nor any of the elders with knowledge of the abuse, reported the sexual abuse to law enforcement or child protective services as required by applicable law at the time.  **Ex. A** at ¶ 4; **Ex. B** at ¶ 4-5.

60. By prohibiting disclosure of sexual abuse within the church to law enforcement, Watchtower NY and Watchtower PA failed to take reasonable steps to protect children in the community, including Plaintiffs, from continued and repeated sexual abuse.

61. By failing to adequately investigate and punish known instances of sexual abuse within the church, Watchtower NY and Watchtower PA failed to take reasonable steps to protect children in the community, including Plaintiffs, from continued and repeated sexual abuse.

62. The Watchtower Protocols failed to enact and implement any reasonable steps to prevent the continued sexual abuse of Plaintiffs, and thereby effectively permitted and sanctioned such abuse to continue.

63. As a result of the sexual abuse perpetrated by the elders that went unreported and unhindered the Church, Plaintiffs have suffered severe, debilitating, lifelong emotional and psychological damage.

64. Plaintiffs can establish that officers, directors, officials, volunteers, representatives, and/or agents of Defendant Watchtower NY knew, had reason to know, or were otherwise on notice of widespread unlawful childhood sexual abuse by employees, officers, directors, officials, volunteers, representatives, and/or agents of the Church and Watchtower NY

failed to take reasonable steps to prevent future acts of such unlawful sexual abuse.

65. Plaintiffs can establish that officers, directors, officials, volunteers, representatives, and/or agents of Defendant Watchtower PA knew, had reason to know, or were otherwise on notice of sexual abuse against Plaintiffs by employees, officers, directors, officials, volunteers, representatives, and/or agents and failed to take reasonable steps to prevent future acts of such unlawful sexual abuse.

66. In 1997, the Church, through Watchtower NY and Watchtower PA, instructed elders to send a report to Watchtower NY of anyone who is currently serving or who formerly served in a Watchtower appointed position that is known to have engaged in childhood sexual abuse.  Aff. Of Mark O'Donnell, ¶¶ 11-12, April 15, 2020 (attached as **Exhibit C**).

67. Watchtower NY maintains a complete file of these reports (the "Watchtower Sexual Abuse Database").  **Ex. C** at ¶ 13.

68. Watchtower NY keeps the Watchtower Sexual Abuse Database secret.  **Ex. C** at ¶ 13.

69. Upon information and belief, Watchtower NY and/or Watchtower PA are in possession of the Watchtower Sexual Abuse Database and other documents

that contain evidence that the elders named herein sexually abused Plaintiffs when they were children.

70. Recently, in other child sexual abuse cases, Watchtower NY has refused to produce in discovery the Watchtower Sexual Abuse Database and other documents in its possession that document admissions of childhood sexual abuse by church agents and representatives. *E.g. Padron v. Watchtower Bible & Tract Socy. of New York, Inc.,* 225 Cal. Rptr. 3d 81, 86 (Cal. App. 4th Dist. 2017); J.*W. v. Watchtower Bible and Tract Socy. of New York, Inc.*, 241 Cal. Rptr. 3d 62, 67 (Cal. App. 4th Dist. 2018), *reh'g denied* (Dec. 31, 2018), *review denied* (Mar. 27, 2019), *cert. denied*, 140 S. Ct. 217 (2019).

### III.  CLAIMS

### First Claim: Negligence
(All Defendants)

71. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

72. Defendants owed Plaintiffs the duty to act with the care that a reasonable person would exercise.

73. Without limitation, Defendants Watchtower NY and Watchtower PA breached such duty by: implementing the Watchtower Sexual Abuse

Program; failing to take reasonable steps to prevent known and unknown sexual predators from sexually abusing children in the Church's community; publishing material and directives that protected sexual predators within the Church and failed to protect victims of sexual abuse committed by agents and representatives of the Church; failing to report known sexual abuse committed by agents and representatives of the Church; ignoring mandatory reporting laws and keeping known child sex abuse secret; failing to train its employees and agents to prevent, identify, investigate, respond to, or report to the proper authorities the sexual abuse of children; failing to properly and thoroughly investigate, respond to, and report the sexual abuse of Plaintiffs; employing, promoting, and allowing Svensen to continue to act as Senior Elder despite being a known child abuser; fostering an environment where sexual predators like the Svensens, the Haines, the Means, Mapley Sr., Warnock, Baker, Donavan, Hiebert, and O'Neil could abuse children, including the Plaintiffs, without consequence.

74. As a direct and proximate cause of Defendants' breaches, Plaintiffs have suffered damages.

///

///

///

## **Second Claim: Negligence Per Se**
(All Defendants)

75. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

76. Defendants violated Montana's mandatory reporting statute as it existed at all times relevant to this case, including in the years 1976–1977, by not reporting the sexual abuse of Plaintiffs as required by the mandatory reporting statute.  R.C.M. 10-1304 (attached as **Exhibit D**).

77. Montana's mandatory reporting statute in effect at the time Plaintiffs were sexually abused was enacted to protect a specific class of people: children who are victims of abuse or neglect.

78. Plaintiffs were member of such class.

79. Plaintiffs' injuries are the sort that the statute was enacted to prevent.

80. The statute was intended to regulate members of Defendants' class.

81. As a direct and proximate cause of Defendants' violation of the statute, Plaintiffs have suffered damages.

///

///

///

## Punitive Damages
(All Defendants)

82. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

83. Defendants are guilty of actual malice.

84. Defendants had knowledge of facts or intentionally disregards facts that created a high probability of injury to Plaintiff and: (1) deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to Plaintiff; and/or (2) deliberately proceeded to act with indifference to the high probability of injury to Plaintiff.

## IV.  Prayer for Relief

WHEREFORE, Plaintiffs claim relief against Defendants as follows:

a. Judgment against Defendants for general damages in amounts consistent with the allegations contained herein and to be established by the evidence at trial.

b. Judgment against Defendants for special damages in amounts consistent with the allegations contained herein and to be established by the evidence at trial.

c. Judgment against Defendants for the costs incurred in prosecuting these claims, including reasonable attorneys' fees.

d. Punitive damages in amounts consistent with the allegations contained herein and to be established by the evidence at trial.

e. Pre-judgment and post-judgment interest.

f. Such other and further relief as the Court deems just and equitable.

## V. Jury Demand

Plaintiffs hereby demand a jury trial on all issues allowed by applicable law.

DATED this 1st day of May, 2020.

/s/ Ryan Shaffer
Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP

*Attorneys for Plaintiff*