## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| ARIANE ROWLAND, and JAMIE SCHULZE | ) ) ) | Cause No. CV 20-59-BLG-SPW |
| Plaintiff, | ) ) | **ORDER RE PLAINTIFFS'** |
| vs. | ) ) | **MOTION FOR SANCTIONS** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | ) ) ) ) | |
| Defendants. | ) ) ) | |

Before the Court is Plaintiffs Ariane Rowland's and Jamie Schulze's Motion for Sanctions (Doc. 90), filed December 3, 2021. Defendant Watch Tower Bible and Tract Society of Pennsylvania ("WTPA") responded to the motion on December 28, 2021. (Doc. 95). Plaintiffs filed their reply on January 10, 2022. (Doc. 98). The Court heard oral argument on the motion on April 5, 2022. The motion is deemed ripe for adjudication.

## I.    RELEVANT BACKGROUND

On June 22, 2020, WTPA filed a motion to dismiss the present action arguing that this Court lacked personal jurisdiction over the defendant. (Doc. 9). To support the motion, WTPA attached an affidavit from WTPA's General Counsel, Philip Brumley. (Doc. 10-1). Mr. Brumley made several statements

including "WTPA does not conduct business in Montana, and is not and never has been registered to carry on business in Montana" and "WTPA has no contact with congregations of Jehovah's Witnesses located in Montana." (Doc. 10-1 at 2). Plaintiffs responded and presented several documents which Plaintiffs argued dispute Brumley's statements. (Doc. 15). WTPA then filed a second affidavit from Brumley in which Brumley stated that he has direct knowledge of the information in the affidavit and that the documents presented by Plaintiffs do not invalidate his earlier statements. (Doc. 18-1).

On August 18, 2020, the Court reserved ruling on WTPA's motion to provide parties an opportunity to conduct discovery regarding the personal jurisdiction issue. (Doc. 24).

On September 15, 2020, Joel Taylor, the Associate General Counsel for Watchtower Bible and Tract Society of New York, moved for pro hac vice admission on behalf of Defendants. (Doc. 25). The motion was granted. (Doc. 26).

In the following months, Plaintiffs filed motions to compel discovery. (Docs. 46 & 48). The Court granted one motion and granted in part and denied in part the other motion.

On August 27, 2021, Plaintiffs sent Defendants a letter requesting that WTPA withdraw its motion to dismiss. (Doc. 91-3). The letter was specifically addressed to Jon Wilson and Joel Taylor as counsel for Defendants. The letter

stated, "[a]s jurisdictional discovery has progressed it has become increasingly

apparent that WTPA was doing far more than it has represented." (Doc. 91-3 at 1).

As a result, Plaintiffs asked "WTPA to withdraw its Motion to Dismiss so that

[Plaintiffs] do not waste more time and resources on unwarranted motions

practice." (*Id.*).

Plaintiffs' supplemental response brief to WTPA's motion to dismiss was

due November 9, 2021. (Doc. 76 at 1). On November 5, 2021, WTPA withdrew its

motion to dismiss. (Doc. 84).

Plaintiffs now move for sanctions against Philip Brumley and Joel Taylor,

personally, for "perpetuat[ing] obviously false statements as the sole evidentiary

basis for a dispositive motion." (Doc. 91 at 1-2).

## II.    LEGAL STANDARD

Plaintiffs request sanctions under 28 U.S.C. § 1927 and the Court's inherent

authority.

28 U.S.C. § 1927 states:

> Any attorney or other person admitted to conduct cases in any court of
> the United States or any Territory thereof who so multiplies the
> proceedings in any case unreasonably and vexatiously may be required
> by the court to satisfy personally the excess costs, expenses, and
> attorneys' fees incurred because of such conduct.

"To impose liability under 28 U.S.C. § 1927, a court must find that an attorney

acted recklessly or in bad faith." *United States v. Associated Convalescent*

*Enterprises, Inc.*, 766 F.2d 1342, 1346 (9th Cir. 1985). Sanctions cannot be imposed under 28 U.S.C. § 1927 against a party or an employee of a party, only upon an attorney or other individual admitted to represent a party. *FTC v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986). Similarly, 28 U.S.C. § 1927 sanctions cannot be imposed against an attorney's law firm. *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015).

Regarding a court's inherent sanction authority, "[t]he inherent powers of federal courts are those that are necessary to the exercise of all others." *Primus Auto. Fin. Serv.s, Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). "The most common utilization of inherent powers is a contempt sanction levied to protect the due and orderly administration of justice and maintain the authority and dignity of the court." *Id.* A federal court may award a sanction of attorney's fees against a party if that court finds that the sanctioned party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.*

## III.   DISCUSSION

As an initial matter, WTPA asserts "[t]he safe harbor from sanctions provided for in Rule 11 clearly applies here and should be applied to deny Plaintiffs' Motion for Sanctions . . . ." (Doc. 95 at 17).

Federal Rule of Civil Procedure 11 establishes an avenue for parties to seek sanctions against the signatories of representations to the court. A party seeking

Rule 11 sanctions may file a motion with the court. Fed. R. Civ. P. 11(c)(2).

However, the sanctioning party cannot file a motion or must withdraw a previously

filed motion "if the challenged paper, claim, defense, contention, or denial is

withdrawn or appropriately corrected within 21 days after service or within another

time the court sets." *Id*. This 21-day provision is known as Rule 11's safe harbor

and is intended to protect parties advancing questionable contentions but who

candidly withdraw such contentions within the allotted time frame. Fed. R. Civ. P.

11, Adv. Comm. Notes, 1993 Amend.

Plaintiffs do not dispute that WTPA timely withdrew its motion to dismiss in

compliance with Rule 11. Instead, Plaintiffs argue that Rule 11's safe harbor is not

applicable because Plaintiffs are not seeking sanctions against the signatories of

WTPA's motion to dismiss nor are they seeking sanctions under Rule 11 at all.

Further, Plaintiffs contend Rule 11 does not preclude a party from seeking

sanctions under other authorities.

On this point, Plaintiffs are correct. Rule 11 "does not inhibit the court in

punishing for contempt, in exercising its inherent powers, or in imposing sanctions,

awarding expenses, or directing remedial action authorized under other rules or

under 28 U.S.C. § 1927." Fed. R. Civ. P. 11, Adv. Comm. Notes, 1993 Amend.

Were Plaintiffs seeking Rule 11 sanctions, WTPA's timely withdrawal of its

motion to dismiss would have deterred any such efforts. However, as Plaintiffs are

seeking sanctions under 28 U.S.C. § 1927 and the Court's inherent authority, Rule 11's safe harbor protection is not applicable. The Court shall proceed to address the merits of Plaintiffs' motion.

## A. 28 U.S.C. § 1927 Sanctions

Noted above, 28 U.S.C. § 1927 authorizes the Court to sanction "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . ." Therefore, to be sanctioned under § 1927, a transgressing party need not be a signatory to a representation submitted to the Court. The sanctioned party must, however, "multiply the proceedings in both an 'unreasonable and vexatious manner.'" *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). § 1927 sanctions must also be supported by a finding of subjective bad faith. *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). The Ninth Circuit has previously found § 1927 sanctions appropriate in situations where an attorney either "recklessly or intentionally misled the court," or "recklessly raised a frivolous argument which resulted in the multiplication of proceedings . . . ." *In re Girardi*, 611 F.3d at 1061.

Plaintiffs argue § 1927 sanctions are appropriate here because Brumley and Taylor vexatiously and recklessly multiplied the proceedings by 17 months due to the use of Brumley's affidavit as support for WTPA's motion to dismiss.

Specifically, Plaintiffs claim Brumley's affidavit contains false and misleading statements that were then used as the sole evidentiary basis for WTPA's motion for dismissal of the case based on lack of personal jurisdiction. Brumley and Taylor are both in-house counsel for WTPA and were in a unique position to know the veracity, or lack thereof, of Brumley's statements. Plaintiffs assert Brumley and Taylor perpetuated those statements for 17 months, forcing Plaintiffs to litigate numerous motions to compel, all the while knowing the statements were misleading at best if not outrightly false. Either way, Plaintiffs claim Brumley and Taylor acted in bad faith making their conduct sanctionable under § 1927.

WTPA responds that § 1927 sanctions are inappropriate as neither Brumley nor Taylor perpetuated any false statements and Brumley's affidavit statements are truthful and accurate.

As to Joel Taylor, the Court is not persuaded that Taylor engaged in any sanctionable conduct. Plaintiffs acknowledge that so far, the only conduct Taylor has actively engaged in is submitting an affidavit in support of his motion *for pro hac vice* admission. Taylor's admission took place months after WTPA filed its motion to dismiss that included Brumley's affidavit. Despite this, Plaintiffs assert Taylor should have looked into the veracity of Brumley's statements. Plaintiffs claim the letter they sent to Taylor in August 2021 provided notice to Taylor that Brumley's statements existed and were the sole basis for the pending motion to

dismiss. Therefore, because WTPA did not withdraw its motion until early November, the continued perpetuation of Brumley's statements for two months constitutes evidence that Taylor acted recklessly and vexatiously. However, the Court is not satisfied that Taylor's inaction is sufficient to make a finding that Taylor acted in bad faith to vexatiously or recklessly multiply the proceedings. There simply is no evidence to support what Taylor knew about Brumley's statements, when Taylor knew about Brumley's affidavit, or what steps Taylor might have undertaken from August 2021 to November 2021 after Taylor received Plaintiffs' letter. Were the Court to sanction Taylor now, such a sanction would be supported by nothing more than speculation. As a result, the Court finds § 1927 sanctions against Taylor to be inappropriate and denies Plaintiffs' motion on this point.

Regarding Brumley, the question of sanctions becomes much more complicated. Plaintiffs' complaint, filed May 1, 2020, alleges that Plaintiffs' sexual abuse took place in the 1970s and 1980s. (Doc. 1 at 6-7). Thus, the relevant timeframe for analyzing WTPA's conduct and relationship to various Jehovah's Witness congregations would be in the 1970s and 1980s. WTPA filed its motion to dismiss on June 22, 2020, with Brumley's affidavit attached. (Doc. 9-1). Brumley's affidavit contains several statements about the role of the WTPA and its relationship to the Jehovah's Witnesses in Montana. Brumley states:

1. I am General Counsel for defendant Watch Tower Bible and Tract Society of Pennsylvania. ("WTPA").
2. In this role, I have direct knowledge of the information contained in this Affidavit.
3. WTPA is a non-profit religious membership corporation formed in 1881 under the non-profit corporation laws of the State of Pennsylvania.
4. WTPA's registered office is located at 1 Kings Drive, Tuxedo Park, New York.
5. WTPA has its own assets, liabilities, offices, board of directors, and officers, separate from every other entity used by Jehovah's Witnesses.
6. WTPA is not the direct or indirect parent or subsidiary of any other corporation involved in this action.
7. WTPA does not have (and never has had) offices in Montana, does not own assets in Montana, and does not have employees in Montana.
8. WTPA does not conduct business in Montana, and is not and never has been registered to carry on business in Montana.
9. WTPA has no agent for service of process in Montana.
10. WTPA has no contact with congregations of Jehovah's Witnesses located in Montana.
11. WTPA does not establish or disseminate policy or procedure to congregations of Jehovah's Witnesses in Montana.
12. WTPA does not appoint or remove elders, ministerial servants or publishers in congregations of Jehovah's Witnesses in Montana.
13. WTPA exists to provide certain business needs of Jehovah's Witnesses including, among other things, holding copyright to books, magazines, songs, and videos. It also provides international humanitarian aid to communities after natural disasters.
14. The publications to which WTPA owns copyrights include *The Watchtower* and *Awake!* magazines, as well [sic.] books, tracts and brochures that are used to explain various aspects of the Bible.
15. WTPA does not author the substantive content or print hard copies of the books, magazines, brochures and tracts referred to above.
16. On the contrary, the copyrighted materials are published by co-defendant Watchtower Bible and Tract Society of New York, Inc. (hereinafter "WTNY"), a separate corporation.

17. WTNY was organized and exists under the laws of the State of New York as a not-for-profit religious corporation. Its headquarters are in Wallkill, New York.

(*Id.*). Again, this affidavit served as the sole evidentiary basis for WTPA's motion to dismiss.

Plaintiffs assert that many of these sworn statements are materially false and intentionally misleading. Plaintiffs further claim Brumley submitted his affidavit, knowing the statements were at least misleading, with the hope that the Court would dismiss Plaintiffs' case before substantive discovery could begin. Examining the statements themselves, it is true that Brumley framed the information in a confusing manner.

Plaintiffs' claims are principally concerned with conduct that occurred in the 1970s and 1980s. Brumley's statements, however, often describe WTPA's role and activities within the Jehovah's Witnesses' organization in present terms. For example, Brumley stated "WTPA has no contact with congregations of Jehovah's Witnesses located in Montana," and also that "WTPA does not establish or disseminate policy or procedure to congregations of Jehovah's Witnesses in Montana." (Doc. 9-1 at 2). These statements do nothing to describe WTPA's activities in the 1970s or 1980s. In contrast, some of Brumley's other statements demonstrate that, at least in regard to certain issues, Brumley had access to WTPA's activities in the past such as when he stated "WTPA does not have (and

never has had) offices in Montana, does not own assets in Montana, and does not have employees in Montana" or "WTPA does not conduct business in Montana, and is not and never has been registered to carry on business in Montana." (*Id.*).

It is perplexing that Brumley was capable of describing WTPA's past conduct on certain topics while on others, such as WTPA's contacts with Montana Jehovah's Witnesses, Brumley could only describe WTPA's present state of affairs. Indeed, it was this discrepancy in language the Court found confusing enough to allow jurisdictional discovery to proceed, especially when the Court compared Brumley's statements to exhibits Plaintiffs were able to produce in limited discovery. (Doc. 24 at 4) ("Together, these exhibits and Brumley's affidavits show WTPA's role in the events at issue is unclear. While Brumley's assertions may be true at present, Plaintiff's exhibits show WTPA may have played a greater role in the church's governance in the past—which could include the congregation in Hardin, Montana.").

The language discrepancy is further exacerbated by the exhibits and documents Plaintiffs have presented in the months since WTPA filed its motion to dismiss. For example, Plaintiffs presented a 1970 letter from a former WTPA president in which WTPA appears to dismiss a member of a Jehovah's Witness congregation due to that member's actions. (Doc. 15-3). Another document presented by Plaintiffs is a 2002 letter from WTPA to an official at BBC-TV

Panorama. (Doc. 15-4). In the letter, WTPA's Director of the Office of Public Information provides a detailed explanation for how the Jehovah's Witness organization responds to reports of child sexual abuse using the language of "[o]ur procedures" and "[o]ur policy." (*Id*. at 3). Additional letters from WTPA advise various Jehovah's Witness congregations on matters including handling child sexual abuse at the hands of church members including letters addressed "[t]o all bodies of elders." (Docs. 20-1, 20-2, 20-3, 20-4). Finally, Plaintiffs recently submitted the affidavit of WTNY's former Assistant Secretary-Treasurer, Don Adams from 1986. (Doc. 106-1). Adams describes the structure of the Jehovah's Witness organization including that of a Governing Body that directs all teaching and congregational activities of Jehovah's Witnesses globally. (*Id*. at 2-3). Adams further states "[t]he principal corporation used by the Governing Body is the Watch Tower Bible and Tract Society of Pennsylvania . . . Under the Watch Tower Bible and Tract Society of Pennsylvania, the Governing Body directs 95 branches through Branch Committees that report their progress to the Governing Body . . . ." (*Id*. at 3-4).

Taken together, these documents demonstrate that in past decades WTPA played a more involved and pivotal role in the operation of Jehovah's Witness congregations. The documents also demonstrate that evidence of this influential role existed and that Brumley, as General Counsel for WTPA, should have been

able to access the information at the time he made his sworn statements. By seemingly failing to investigate and provide a more accurate description of WTPA's activities in past decades, Brumley's actions demonstrate, at minimum, a reckless disregard for providing an accurate and truthful accounting of WTPA's role. After all, Brumley could accurately describe WTPA's past activities in Montana regarding whether or not WTPA operated offices in the state or was registered to do business in the state. Yet, Brumley chose to describe WTPA's contact and role in congregational affairs in Montana solely in present tense. This demonstrates to the Court a conscious decision to provide only a limited depiction of WTPA's corporate activities and a reckless disregard of documents and other evidence describing a different WTPA in the 1970s and 1980s—the relevant timeframe for Plaintiffs' claims. Brumley's conduct permitted WTPA to file its motion to dismiss that then multiplied the proceedings for 17 months through jurisdictional discovery and motions to compel.

Therefore, the Court finds Brumley's conduct sanctionable under 28 U.S.C. § 1927 and orders Brumley to personally satisfy the excess costs, expenses, and attorney's fees incurred by Plaintiffs as a result of Brumley's affidavit and WTPA's resulting motion to dismiss. Plaintiffs shall submit a financial affidavit to the Court describing those costs and expenses directly stemming from their efforts to respond to WTPA's motion to dismiss and their efforts to compel jurisdictional

discovery. The Court shall then issue a supplemental order establishing the exact amount of fees and costs.

### B. The Court's Inherent Authority

"When a losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, sanctions under the Court's inherent powers may take the form of attorney's fees." *Primus Auto. Fin. Serv.'s, Inc.*, 115 F.3d at 648. For the reasons stated above, the Court finds sanctions under its inherent authority against Taylor inappropriate. The Court cannot determine that Taylor's conduct amounted to bad faith or vexatious or wanton conduct. The Court denies Plaintiffs' motion on this point.

Further, because the Court has already determined sanctions to be appropriate against Brumley under 28 U.S.C. § 1927, the Court will employ its discretion and decline to consider contempt sanctions against Brumley under the Court's inherent authority.

### IV.   CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion for Sanctions (Doc. 90) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiffs shall submit a financial affidavit of all costs, expenses, and attorney's fees directly resulting from their efforts to respond to WTPA's motion to dismiss and conducting jurisdictional discovery in

response to WTPA's motion to dismiss and Brumley's affidavit within fourteen

(14) days of the date of this order. Brumley shall then have fourteen (14) days

following the filing of Plaintiff's financial affidavit to respond to the affidavit.


DATED this 28rd day of August, 2022.

SUSAN P. WATTERS
United States District Court Judge