Jon A. Wilson
Brett C. Jensen
BROWN LAW FIRM, P.C.
315 North 24ᵗʰ Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY 10549
Telephone/E-Fax: (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| ARIANE ROWLAND, and JAMIE SCHULZE, | Cause No. CV-20-59-BLG-SPW |
| Plaintiffs, | **DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEPOSITIONS** |
| vs. | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

**TABLE OF CONTENTS**……………………………………………...……….2

**TABLE OF AUTHORITIES**……………………………………………..…..3

**EXHIBIT INDEX** …………………………………………………………....4

**INTRODUCTION**………………………………………………………......5

**FACTUAL BACKGROUND**…………………………………...……………5

**ARGUMENT**………………………………………………………….…..13

    **A.**    **PLAINTIFFS' MTC SHOULD BE DENIED FOR FAILING TO MEET AND CONFER AND INTENTIONALLY MISSTATING WTNY'S POSITION**…………………………………………...…..13

    **B.**    **MESSRS. BREAUX AND SHUSTER SHOULD NOT BE DEPOSED BECAUE THEY ARE APEX WITNESSES, AND MR. SMALLEY SHOULD NOT BE DEPOSED BECAUSE HE HAS NO RELEVANT FACTS**………………………..…...……..…..18

    **C.**    **PLAINTIFFS' PROPOSED PROCEDURE FOR THE 30(b)(6) DEPOSITION SHOULD BE REJECTED AS CONTRARY TO THE FEDERAL RULES OF CIVIL PROCEDURE**…………………………………………….……..…..22

**CONCLUSION**……………………………………………………………..24

**CERTIFICATE OF COMPLIANCE**……………………………………..25

**CERTIFICATE OF SERVICE**……………………………………………26

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page**

*Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259 (N.D. Cal. 2012)……………………………………………………………...…20-21

*Baine v. Gen. Motors Corp.*, 141 F.R.D. 332 (M.D. Ala. 1991)……………..……...21

*Brewer v. BNSF Railway Co.*, 2015 WL 13810744 (D. Mont. 2015)………....20-21

*Evans v. Allstate Ins. Co.*, 216 F.R.D. 515 (N.D. Okla. 2003)………………....21

*Friedman v. 24 Hour Fitness USA, Inc.*, 2008 WL 11338168 (C.D. Cal. 2008)…………………………………………………………………...23-24

*Infernal Tech., LLC v. Epic Games, Inc.*, 339 F.R.D. 226 (E.D.N.C. 2021)….23-24

*Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212 (6th Cir. 1989)………21

*Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985)……………...………...21

*Osborne v. Billings Clinic*, 2015 WL 150252 (D. Mont. 2015)………............13, 15

*Quality Aero Tech., Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313 (E.D.N.C. 2002)………………………………………………………………....23

*Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979)…..........................................21

*State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227 (E.D. Penn. 2008)…...……………………………………………………………22-24

*Thomas v. Int'l Business Machines*, 48 F.3d 478 (10th Cir. 1995)………………..21

*Vasquez v. Leprino Foods Co.*, 2021 WL 2661451 (E.D. Cal. 2021)………...23-24

## *Statutes and Rules*

Fed.R.Civ.P. 30(a)(2)(A)(ii)………………….…................................................22

Fed.R.Civ.P. 30(b)(6)……………………………………………………*passim*

Fed.R.Civ.P. 30(d)(1)…………………………………..………………………..9

L.R. 26.3(c)(1)…………………………………………………....…….……13-15

## **EXHIBIT INDEX**

**Exhibit A**        Declaration of Allen Shuster……………………………...18-19

**Exhibit B**        Declaration of Gary Breaux………………………….......18-19

**Exhibit C**        Declaration of Marvin Gene
                   Smalley……………………………………………………19-20

# INTRODUCTION

Defendant Watchtower Bible and Tract Society of New York, Inc.

("WTNY"), by and through its attorneys, respectfully submits its Response Brief in

Opposition to Plaintiffs' Motion to Compel Depositions ("Plaintiffs' MTC") (Doc.

131).

As explained herein, Plaintiffs failed to adequately meet and confer

regarding the depositions at issue.  That deficiency alone warrants denial of

Plaintiffs' MTC.  Additionally, Plaintiffs' Brief in Support of Their Motion to

Compel Depositions ("Plaintiffs' Brief in Support") (Doc. 132) (i) materially and

intentionally misstates WTNY's positions in a number of respects, (ii) relies

entirely on attorney arguments instead of any evidentiary support , and (iii) fails as

a matter of law.

Plaintiffs appear intent on manufacturing discovery disputes and then

rushing to Court to paint WTNY as a bad actor.  This Court should not

countenance such behavior.

# FACTUAL BACKGROUND

A careful review of the factual record missing from Plaintiffs' Brief in

Support highlights the propriety of a denial of the relief Plaintiffs seek.

WTNY served its initial privilege log on March 25, 2022.  *See* Foundational

Affidavit of Jon A. Wilson ("Wilson Affidavit"), Ex. 1.  On April 13, 2022,

Plaintiffs advised "additional information is needed to appropriately assess the application of the asserted privileges[,]" including for those documents for which the clergy-penitent privilege was asserted "[t]he nature of the religious guidance, admonishment, or advice that is the subject of the allegedly privileged communication[.]" *Id.*, Ex. 2, p. 1.

WTNY responded on May 2, 2022, stating the legal basis for the privileges asserted, providing additional information regarding the identified documents, and producing a first supplemental privilege log. *Id.*, Ex. 3. Plaintiffs made no response prior to the filing of Plaintiffs' MTC, and other than Plaintiffs' argument that the clergy-penitent privilege has been waived as to Documents 29, 37, 39, and 40 in support of Plaintiffs' Motion to Compel Re: Waived Privilege in the *Caekaert* lawsuit (Doc. 132 in Cause No. CV 20-52-BLG-SPW), raised no further issues with the privilege log until a September 12, 2022, e-mail discussed *infra*.

By June 29, 2022, e-mail, Plaintiffs requested dates for depositions including a "foundational deposition of WTNY". *See* Wilson Affidavit, Ex. 4. By July 14, 2022, e-mail, WTNY advised: "WTNY . . . has some concerns about the parameters of the foundational 30(b)(6) you discuss below. We are further discussing with our client WTNY and will be back with you shortly." *Id.*, Ex. 5. These concerns were discussed during an August 2, 2022, telephone call between counsel. *Id.*, ¶ 9. By letter dated August 15, 2022, WTNY advised:

> While WTNY continues to struggle to understand the relevancy of the deposition notice topics dealing with electronic note-taking systems that were created more than a decade after the alleged abuse in these cases, it has no objection to 30(b)(6) deposition topics that address record keeping and the like that is temporally limited to the time period of the alleged abuse or substantively related to the handling of a specific document on the privilege log.

*Id.*, Ex. 6, p. 2.  By letter dated August 18, 2022, Plaintiffs confirmed WTNY's concerns about the draft 30(b)(6) deposition notice had been resolved.  *Id.*, Ex. 7. Plaintiffs sent an August 30, 2022, letter, with an updated Notice scheduling the deposition for September 27, 2022.  *Id.*, Ex. 8.  Plaintiffs never suggested the 30(b)(6) deposition would be the first of multiple 30(b)(6) depositions with additional unspecified topics covered later.

By letter dated September 9, 2022, Plaintiffs provided certain "expectations" regarding the 30(b)(6) deposition, including that WTNY's 30(b)(6) representative should be prepared to discuss unspecified databases or other information "in the current possession of other Jehovah's Witness entities that WTNY has reasonable access to." *Id.*, Ex. 9, pp. 1-2.  Plaintiffs then sent a September 12, 2022, e-mail indicating new scheduling orders were needed in both cases:

> We did not anticipate the extensive and time consuming litigation that is going to be necessary over WTNY's privilege log, which needs to be resolved before we can complete several fact witness depositions. We have one motion on the privilege log pending, and more are likely coming.  However, we need to complete the Brumley and Rule 30b6 depositions to more fully evaluate those motions.

*Id.*, Ex. 10.  This was the first indication Plaintiffs intended to file additional

motions regarding the privilege log, although no specifics were provided as to the

basis for such motions.  By letter dated September 15, 2022, WTNY responded:

> Considering first Ryan's September 9 letter, our letter dated August
> 15, 2022, set forth WTNY's positions regarding the 30(b)(6)
> deposition.  Ryan's letter dated August 18, 2022, expressed
> understanding of and agreement with the positions set forth in the
> August 15 letter.  WTNY will prepare its representative in accordance
> with those provisions, and to the extent Ryan's September 9 letter
> seeks to change the parameters set forth in the August 15 and 18
> letters, WTNY does not agree with the same.
>
> Ryan's September 9 letter also suggests possible questions regarding
> "CCWJ or some other JW entity."  The Notice dated August 30, 2022,
> only includes the following reference to other potential entities:
> "Identify how elders have been instructed to report instances or
> allegations of child sex abuse to WTNY, WTPA, CCJW, or any other
> Jehovah's Witness entity or group responsible for managing and
> responding to instances or allegations of child sex abuse."  WTNY
> will prepare its representative in regard to that topic, and to the extent
> Ryan's September 9 letter seeks to increase the scope of topics,
> WTNY does not agree to the same.
>
> Turning to Ryan's September 12 e-mail, WTNY is generally
> agreeable to a request for new scheduling orders in both cases.
> However, WTNY does not agree with any suggestion that the need for
> new scheduling orders is due to any actions on the part of WTNY, as
> WTNY initially produced its privilege log on March 25, 2022.

*Id.*, Ex. 11.  These issues were discussed during a September 19, 2022, telephone

call between counsel.  *Id.*, ¶ 14.  Plaintiffs again signaled no intention the 30(b)(6)

deposition would be the first of multiple 30(b)(6) depositions with additional

unspecified topics covered later.

By letter dated September 23, 2022, Plaintiffs summarized their

understanding of the September 19 telephone call. *Id.*, Ex. 12.  At the conclusion

of this letter, Plaintiffs advised WTNY for the first time:

> Lastly, we wanted to make sure that counsel understands that
> the presently noticed Rule 30(b)(6) topics do not cover the entirety of
> testimony that Plaintiffs may seek from WTNY in this case.  The
> purpose of the presently noticed deposition topics is to obtain
> foundational testimony regarding the manner in which information
> regarding child sex abuse at U.S. Congregations during the period
> 1973 to 1992 was obtained, stored, and managed over time.  As
> discovery continues to progress in these cases, Plaintiffs anticipate
> deposing WTNY on other topics material to this case under Fed. R.
> Civ. Pro. 30(b)(6).  However, Plaintiffs are not prepared to notice
> those topics because we first need to resolve disputes over WTNY's
> claims of testimonial privilege.  Please let me know if you have any
> concerns or objections in this regard.

*Id.*, Ex. 12, p. 2.  Besides providing the first notice that Plaintiffs intended the

30(b)(6) deposition to be the first of multiple 30(b)(6) depositions, covering

unspecified topics later, this letter referred to "disputes over WTNY's claims of

testimonial privilege" without identifying what they were.  By letter dated

September 26, 2022, WTNY responded:

> Finally, as to the 30(b)(6) deposition of WTNY, the length of the
> deposition is limited to 7 hours pursuant to Rule 30(d)(1),
> Fed.R.Civ.P.  We do not envision producing 30(b)(6) representatives
> of WTNY for deposition on multiple occasions, just as we anticipate
> you do not intend to make each of your respective clients available for
> deposition on multiple occasions.

*Id.*, Ex. 13, p. 2.

By September 27, 2022, e-mail, Plaintiffs advised:

> As far as Depos in NY on 10/11[1] and 10/12 go, I am concerned that
> we are not going to be ready.  I understand WTNY's position is that
> we must notice up all 30b6 topics at one time.  If we cannot come to
> an agreement on that issue, we may need to get some time with the
> Judge before we go.  Additionally, we have been considering adding a
> couple topics related to corporate hierarchy / organization.  We would
> also like to get Gene Smalley, Gary Breaux and Allen Shuster
> deposed.

*Id.*, Ex. 14.  Besides proposing additional 30(b)(6) topics only two weeks before

the deposition was to occur, this was the first notice Plaintiffs wanted to depose

Messrs. Smalley, Breaux, and Shuster, who had never been identified by any party.

Watch Tower Bible and Tract Society of Pennsylvania ("WTPA") responded by

September 28, 2022 e-mail:

> Regarding the depositions of Gene Smalley, Gary Breaux and Allen
> Shuster, we understand that they are members of the faith in New
> York, but neither WTPA nor WTNY has ever communicated with
> them regarding any potential depositions.  As such, we would need to
> consult with them and evaluate any notices addressed to them
> individually to assess next steps.

*Id.*, Ex. 15.

By September 28, 2022 e-mail, Plaintiffs asserted:

> There is plenty of law on rule 30b6 establishing that staggering topics
> as the case progresses is not multiple depositions under the rules.  In
> this case, where material evidence is not presently available to the
> Plaintiff, but may well become available later, there is no justification
> to make us notice up all 30b6 topics now.  This is not really

---

[1] The parties had agreed to move the 30(b)(6) deposition to October 11, 2022.

controversial and NY's position is not justified or helpful in getting discovery completed.  So, we will need to have Judge Watters weigh in on this before we go through with the 30b6.  I suppose that means that we should cancel them.

*Id.*, Ex. 16.  While asserting there was "plenty of law" in support of their position,

Plaintiffs provided none.  By letter dated September 29, 2022, which WTNY

received October 4, 2022, Plaintiffs advised:

> Please find enclosed draft deposition notices for Phillip Brumley, Gary Breaux, Gene Smalley, and Allen Shuster . . . .  Please confirm that you will produce these gentlemen for depositions (or specifically state that you will not)[.]
>
> As it pertains to the deposition of WTNY, Plaintiffs would like to agree on a staggered discovery plan where we depose WTNY first on the foundation of the privilege claims and corporate structure so that we can resolve disputes over the privilege, while reserving liability topics (i.e. direction given by WTNY to local congregations, knowledge WTNY had of what occurred at local congregations) for later once we know what evidence and testimony will be in play.  Jon has requested that we provide notice of those other topics now.  It is not possible to do this right now because the case is evolving with discovery.  However, I can state that none of the later topics will duplicate the topics we would notice now.  We understand the time limits in the rules and are not asking for an agreement to exceed those right now.  We would like to figure out a way to reach an agreement on the staggered discovery rather than burdening the judge with it.  However, if that is not possible we will seek relief from the Court early next week.  Please let me know by close of business on Monday, October 3rd if you are willing to consider working something out.

*Id.*, ¶ 20 and Ex. 17, pp. 1-2.  This letter, again failing to specify what privilege

disputes were outstanding, provided Plaintiffs' first proposal for "a staggered

discovery plan" regarding the 30(b)(6) deposition.

By October 5, 2022, e-mail, WTNY replied:

> [A]s to the proposed depositions of Messrs. Breaux, Shuster, and Smalley, we are concerned that the requests may be inappropriate, premature, or ultimately unnecessary.  None of them have any direct knowledge of any of the claims, none of them have ever met your clients or co-defendant Mr. Mapley, and none of them were executive officers or members of the boards of directors of either corporation during the relevant time period.  Moreover, because of their important roles in connection with the religion, they may be subject to protection under the apex doctrine.  In addition, Mr. Smalley is over 82 years old.  Can you provide the basis for the necessity of these depositions, especially since there has yet to be a Rule 30(b)(6) deposition of the defendants?  Thereafter, we will decide whether to seek the Court's assistance with protective orders.

> [F]inally, we would like to respond to the Rule 30(b)(6) issues raised in your September letter.  We have been unable to locate any authority for the staggering of the corporate deponent(s).  It appears you want us to agree in advance to multiple depositions on topics yet to be determined.  Absent some authority to the contrary, it would seem prudent to schedule the deposition when you deem appropriate, take it, and then if you feel there is a legitimate need to reopen the deposition, that you then seek leave of Court to obtain permission.  At that point, your arguments and our response will be concrete rather than hypothetical.

*Id.*, Ex. 18.  Plaintiffs' counsel responded by October 5, 2022 e-mail:

> As it pertains to Breaux, Shuster, and Smalley, these gentlemen have been a part of the Jehovah's Witness organization in New York during the time period relevant to this case and have knowledge relevant to issues in this case.  My understanding is that Plaintiffs get to choose the sequence of their discovery; let me know if you understand otherwise.  While Plaintiffs have been attempting to arrange a Rule 30b6 deposition, that does not preclude us from deposing other people with knowledge relevant to issues in this case, including Breaux, Shuster and Smalley.  The fact that Mr. Smalley is 82 only increases the urgency of getting his testimony preserved sooner than later.  In

the interest of moving things along, we intend to file a Motion to
Compel these depositions.

It appears that WTNY is not agreeing to a staggered Rule 30b6
deposition.  Thanks for clarifying WTNY's position on that.

*Id.*, Ex. 19.  Plaintiffs' MTC and Brief in Support were filed the next day.

## ARGUMENT

### A. PLAINTIFFS' MTC SHOULD BE DENIED FOR FAILING TO MEET AND CONFER AND INTENTIONALLY MISSTATING WTNY'S POSITION

L.R. 26.3(c)(1) provides:

The court will deny any discovery motion unless the parties have
conferred concerning all disputed issues before the motion is filed.
The mere sending of a written, electronic, or voicemail
communication does not satisfy this requirement.  Rather, this
requirement can be satisfied only through direct dialogue and
discussion in a face-to-face meeting (whether in person or by
electronic means), in a telephone conversation, or in detailed,
comprehensive correspondence.

This Court has recognized: "The plain language of the rule states that

sending demand after demand is insufficient to satisfy Rule 26.3(c)(1) because

demands are not dialogue." *Osborne v. Billings Clinic*, 2015 WL 150252, *1 (D.

Mont. 2015).

Plaintiffs first requested the depositions of Messrs. Breaux, Smalley, and

Shuster on September 27, 2022.  No explanation was given why the depositions of

individuals not identified in discovery responses were necessary.  WTNY's

October 5, 2022, e-mail explained the concerns regarding the requested depositions since Messrs. Breaux, Smalley, and Shuster have no direct knowledge about Plaintiffs' claims, have never met Plaintiffs or Mr. Mapley, and were not executive officers or directors of WTNY or WTPA during the relevant time period. WTNY also noted concerns that such depositions could be subject to protection under the apex doctrine and that Mr. Smalley is over 82 years old. Plaintiffs response that Messrs. Breaux, Smalley, and Shuster "have been part of the Jehovah's Witness organization in New York during the time period relevant to this case and have knowledge relevant to issues in this case" failed to identify any facts Messrs. Breaux, Smalley and Shuster know relevant to Plaintiffs' claims and didn't address the concerns regarding the apex doctrine and Mr. Smalley's age. Instead, Plaintiffs preempted L.R. 26.3(c)(1) and filed their motion.

Contrary to the assertions at pp. 4-7 of Plaintiffs' Brief, WTNY **never refused** to produce Messrs. Breaux, Smalley or Shuster for depositions. Rather, WTNY expressed concerns regarding the depositions, asked why they were needed, and indicated the potential need for a protective order. Rather than respond to those concerns, Plaintiffs filed a Motion to Compel containing a strained explanation of the alleged basis for the depositions. *See* Plaintiffs' Brief in Support, pp. 5-7. While the depositions should not be allowed as explained *infra*, Plaintiffs' failure to adequately address WTNY's concerns constitutes a

failure to satisfy the meet and confer requirements of L.R. 26.3(c)(1) pursuant to the reasoning in *Osborne*.

Concerning Plaintiffs' proposal to complete the 30(b)(6) deposition in two stages, WTNY did not receive such proposal until October 4, 2022. Plaintiffs did not even suggest an intention that the 30(b)(6) deposition would be the first of multiple 30(b)(6) depositions with additional unspecified topics to be covered later until September 23, 2022. By then, the parties had communicated about the 30(b)(6) deposition for almost three months, had agreed on the time and location for the deposition, and had agreed on the topics to be covered. Once WTNY learned of Plaintiffs' proposed procedure on October 4, 2022, WTNY raised concerns and requested supporting authority on October 5, 2022. Plaintiffs' response failed to address WTNY's concerns or provide supporting authority, simply responding "It appears that WTNY is not agreeing to a staggered Rule 30b6 deposition." Then, Plaintiffs filed their Motion to Compel. Thus, Plaintiffs failed to satisfy the meet and confer requirements of L.R. 26.3(c)(1) pursuant to the reasoning in *Osborne*.

Plaintiffs' Brief in Support includes numerous allegations that were not raised in communications between Plaintiffs and WTNY [2], including the following:

_____

[2] Page 9 of Plaintiffs' Brief alleges "WTNY will instruct its corporate designees to not answer any questions about sex abuse in Hardin, MT based on its sweeping allegations of testimonial privilege." While WTNY cannot

Plaintiffs contend their "attempts to understand the foundation of WTNY's privilege log have not yielded meaningful information," *see* Plaintiffs' Brief in Support, p. 2.  However, prior to the filing of Plaintiffs' MTC Plaintiffs never responded to the May 2, 2022, letter that added information about the documents identified in the privilege log.  It was not until a September 12, 2022 e-mail, that Plaintiffs indicated more motions regarding the privilege log were "likely coming", although no specifics were provided regarding what such motions would entail.

Page 2 of Plaintiffs' Brief in Support contends there is "good reason to be skeptical" of the privilege log because this Court previously determined Document 29 was "secular in nature."  This is incorrect, as this Court ruled the letter included information learned from a confession and determined "[i]nformation relayed in a confession from an individual to a church official acting in their official capacity is privileged under the clergy-penitent privilege so long as the communication was made in a confidential manner."  *See* Doc. 82, pp. 3-4.

---

speculate about possible deposition objections without knowing the questions to be asked, Plaintiffs sweeping characterizations are without support in the record.

.     Pages 2-3 of Plaintiffs' Brief in Support faults WTNY for not redacting the documents identified in the privilege log, an issue Plaintiffs **had not previously** raised with WTNY.

.     Page 3 of Plaintiffs' Brief in Support asserts **for the first time** that the privilege log is "far too vague."

Ultimately, page 4 of Plaintiffs' Brief in Support alleges "it is now apparent that WTNY wants to withhold material evidence from Plaintiffs, while simultaneously obstructing Plaintiffs' efforts to understand the basis for doing so." Along with being incorrect, the fact these allegations are made in Plaintiffs' MTC when they were not previously raised with WTNY suggests an effort to malign WTNY before the Court that should not be countenanced.

Plaintiffs have not satisfied their meet and confer requirements as to either the requested depositions of Messrs. Breaux, Smalley, and Shuster, or Plaintiffs' proposed procedure for the 30(b)(6) deposition.  Rather than addressing WTNY's legitimate concerns, Plaintiffs' prematurely filed their MTC when WTNY, acting in good faith, declined to acquiesce to the demands of Plaintiffs' counsel, and Plaintiffs' Brief in Support materially misstates WTNY's position in a number of respects.  WTNY respectfully requests that Plaintiffs' MTC be denied.

**B.** **MESSRS. BREAUX AND SHUSTER SHOULD NOT BE DEPOSED BECAUSE THEY ARE APEX WITNESSES, AND MR. SMALLEY SHOULD NOT BE DEPOSED BECAUSE HE HAS NO RELEVANT FACTS**

Plaintiffs ask the Court to rule they may depose Messrs. Breaux, Shuster, and Smalley to assist in evaluating testimonial privileges, but have not identified which documents in the privilege log they are involved with or would have knowledge of.

While Messrs. Breaux and Shuster have given depositions in the past, their responsibilities in connection with the faith have only increased.  Mr. Shuster is the President of the Christian Congregation of Jehovah's Witnesses ("CCJW") and Mr. Breaux is the Vice President, and both have heavy responsibilities.  *See* Declaration of Allen Shuster attached as Exhibit A (hereinafter "Shuster Declaration"), ¶ 4, and Declaration of Gary Breaux attached as Exhibit B (hereinafter "Breaux Declaration"), ¶ 4.  CCJW is not a party to this litigation and did not exist until well after the abuse allegations in the operative Complaint.  *See* Shuster Declaration, ¶ 4, and Breaux Declaration, ¶ 4.

Furthermore, neither Messrs. Shuster or Breaux have any knowledge of the plaintiffs or the alleged abusers.  *See* Shuster Declaration, ¶ 8, and Breaux Declaration, ¶ 8.  Neither has ever cared for, corresponded, or communicated with congregations in Montana.  *See* Shuster Declaration, ¶ 7, and Breaux Declaration, ¶

7. Neither has ever attended religious services at any meeting place of Jehovah's Witnesses in Hardin, Montana. *See* Shuster Declaration, ¶ 9, and Breaux Declaration, ¶ 9. Neither were corporate members or executive officers of WTNY or WTPA during the time of the alleged abuse. *See* Shuster Declaration, ¶ 6, and Breaux Declaration, ¶ 6. Notably, Mr. Breaux did not arrive in New York until well after the alleged abuse ended. *See* Breaux Declaration, ¶ 5. His own personal experience and time with WTNY in New York would thereafter be entirely irrelevant to Plaintiffs' claims.

Messrs. Shuster and Breaux do not know more than any other person who may be designated by WTNY as its 30(b)(6) deponent to address the beliefs and practices of Jehovah's Witnesses, including the topics Plaintiffs say they want to explore. It simply makes more sense to depose a 30(b)(6) deponent whose work is such that he can be more easily expended for the time required to prepare for and give a deposition than Messrs. Shuster and Breaux.

As for Mr. Smalley, he supports the religion's efforts to produce Bible-based literature. *See* Declaration of Marvin Gene Smalley attached as Exhibit C, ¶ 4. He is 82 years old. *Id.* Though he has proofread materials involving child abuse and Jehovah's Witnesses, he has never been responsible for drafting or writing those materials. *Id.*, ¶ 5. During his entire time as a member of WTNY and co-defendant WTPA, he never cared for, corresponded, or communicated with

congregations in Montana. *Id.*, ¶ 7. He does not know any of the plaintiffs or alleged abusers. *Id.*, ¶ 9. He has no personal, direct or indirect knowledge about the abuse allegations in the operative Complaint. *Id.*, ¶ 11. Because of the limits of his work, he knows less than a corporate designee would know on the topics Plaintiffs say they wish to explore. More to the point, while he is acquainted with the beliefs and practices of Jehovah's Witnesses, he admits that other, younger members of the religious Order to which he belongs are far more conversant on child abuse matters than he is. *Id.*, ¶ 12. For the sake of judicial economy, it simply makes more sense to depose a 30(b)(6) deponent whose memory is keen, who can withstand the rigors of a deposition, who knows how Jehovah's Witnesses handle allegations of child abuse, and who is younger than Mr. Smalley.

In *Brewer v. BNSF Railway Co.*, 2015 WL 13810744 (D. Mont. 2015), District Court Judge Brian Morris applied the "apex doctrine" to some proposed depositions, observing:

> Courts have observed a high risk of potential abuse or harassment when a party seeks an apex deposition. *Apple Inc. v. Samsung Electronics Co. Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Courts consider (1) whether the deponent has unique, first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods. *Apple*, 282 F.R.D. at 263.

*Brewer*, *1. Judge Morris also observed the party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied,

and that it is unusual for a court to prohibit taking a deposition altogether, absent extraordinary circumstances. If an apex witness has personal knowledge of facts relevant to a lawsuit, that person may be deposed. *Id.* (citing *Apple*, 282 F.R.D. at 263).

Before a litigant may depose an apex witness, the deponent must show that not only does the proposed witness have superior or unique information about the subject matter of the litigation, but also that such information cannot be obtained through a less intrusive method, such as by deposing lower-ranking executives. *See, e.g., Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989); *Thomas v. Int'l Business Machines,* 48 F.3d 478, 482-484 (10th Cir. 1995); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364,366 (D.R.I. 1985); *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 334-336 (M.D. Ala. 1991); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518-519 (N.D. Okla. 2003).

Here, Plaintiffs haven't even tried to obtain the information they seek from a less intrusive method. Instead, they went straight to Messrs. Shuster and Breaux, apex witnesses whose responsibilities are significant and administrative in nature, and Mr. Smalley, an older man with little knowledge about the issues Plaintiffs want to explore. If any deposition is needed as to a privilege asserted by WTNY,

WTNY will offer a 30(b)(6) deponent who will be fully knowledgeable and competent to testify about that topic and any other properly noticed topic.  There is simply no need to depose Messrs. Shuster and Breaux, who are executive officers with CCJW, not WTNY, and Mr. Smalley, an octogenarian, all of whom have no exclusive or unique personal knowledge that cannot be obtained from WTNY's 30(b)(6) deponent.

**C.    PLAINTIFFS' PROPOSED PROCEDURE FOR THE 30(b)(6) DEPOSITION SHOULD BE REJECTED AS CONTRARY TO THE FEDERAL RULES OF CIVIL PROCEDURE**

Plaintiffs' proposed procedure for the 30(b)(6) deposition was rejected as unfair and violative of Rule 30(a)(2)(A)(ii), Fed.R.Civ.P., which requires leave of court before a deponent can be deposed a second time. *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 234-36 (E.D. Penn. 2008).  In that case, the defendant sought to take multiple 30(b)(6) depositions because "*we decided to take the fraudulent issues which were related to the four counts of the complaint first, then see what happens* and then, you know, seek depositions of the other three counts of the complaints[.]"  *Id.* at 235 (emphasis in original).  The Court noted that serial 30(b)(6) depositions would be costly and burdensome, and reasoned: "[A]llowing for serial depositions, whether of an individual or organization, provides the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the

last." *Id.* at 235.  The Court characterized this "wait-and-see" procedure as "idiosyncratic," allowing the deponent to conduct seriatim depositions instead of drafting a comprehensive notice of deposition. *Id.* at 235-36.

In support of its proposed 30(b)(6) deposition procedure, Plaintiffs rely on *Quality Aero Tech., Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313 (E.D.N.C. 2002).  That Court granted a motion to compel a second 30(b)(6) deposition related to different subject areas because the 1993 Advisory Committee notes "expressly state that for purposes of calculating the number of a [sic] depositions in a case, a 30(b)(6) deposition is separately counted as a single deposition, regardless of the number of witnesses designated." *Id.* at 319.  The reasoning in *Quality Aero* was superseded in *Infernal Tech., LLC v. Epic Games, Inc.*, 339 F.R.D. 226, 230-31 (E.D.N.C. 2021).  The Court noted: "[T]he 1993 Note says nothing about the durational limit of each designee's deposition.  That issue is addressed in the 2000 Advisory Committee Note and presumptively limits each designee's deposition to seven hours on one day." *Id.* at 231.  The Court cited *New Horizont* and other cases where the reasoning in *Quality Aero* was rejected. *Id.* See also *Vasquez v. Leprino Foods Co.*, 2021 WL 2661451, *14 (E.D. Cal. 2021) (rejecting *Quality Aero* and determining an organization is subject to the one-deposition limit so that a second deposition may not occur absent leave of Court); and *Friedman v. 24 Hour Fitness USA, Inc.*, 2008 WL 11338168, * 2 (C.D. Cal.

2008) (second deposition notice to a corporation is like a second notice to any other person and cannot go forward absent leave of court).

Pursuant to *New Horizont*, *Infernal Tech.*, *Vasquez*, and *Friedman*, Plaintiffs' proposed procedure for the 30(b)(6) deposition should be rejected. As suggested in WTNY's October 5, 2022 e-mail, Plaintiffs' counsel should proceed with the 30(b)(6) deposition, and if there is a legitimate need to reopen the deposition, Plaintiffs' can seek leave of Court for permission.

## CONCLUSION

Plaintiffs failed to adequately meet and confer regarding the depositions at issue, and Plaintiffs' Brief in Support misstates WTNY's positions in a number of respects. Additionally, Plaintiffs should not be allowed to depose Messrs. Breaux and Shuster pursuant to the apex doctrine, or Mr. Smalley as having no relevant knowledge. Plaintiffs' proposed procedure for the 30(b)(6) deposition should be rejected pursuant to *New Horizont*, *Infernal Tech.*, *Vasquez*, and *Friedman*. WTNY respectfully requests that Plaintiffs' MTC be denied.

DATED this 20th day of October, 2022.

By:    /s/ Jon A. Wilson
       Jon A. Wilson
       BROWN LAW FIRM, P.C.
       *Attorneys for Defendant Watchtower*
       *Bible and Tract Society of New York,*
       *Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is 4,997 words excluding caption, table of contents and authorities, exhibit index, and certificates of service and compliance.

DATED this 20th day of October, 2022.

By:   /s/ Jon A. Wilson
Jon A. Wilson
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 20, 2022, a copy of the foregoing was served on the following person(s):

1.      U.S. District Court, Billings Division

2.      Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
        MEYER, SHAFFER & STEPANS, PLLP
        430 Ryman Street
        Missoula, MT 59802

3.      Matthew L. Merrill (appearing *pro hac vice*)
        MERRILL LAW, LLC
        1863 Wazee Street, Suite 3A
        Denver, CO 80202

4.      Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
        MOULTON BELLINGHAM PC
        P.O. Box 2559
        Billings, MT 59103-2559

by the following means:

| _1-4_ CM/ECF | _____Fax |
|---|---|
| _____Hand Delivery | _____E-Mail |
| _____U.S. Mail | _____Overnight Delivery Services |

By:   __/s/ Jon A. Wilson_____
        Jon A. Wilson
        BROWN LAW FIRM, P.C.
        *Attorneys for Defendant Watchtower*
        *Bible and Tract Society of New York,*
        *Inc.*