IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ARIANE ROWLAND and JAMIE SCHULZE, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, <br><br> Defendants. | CV 20-59-BLG-SPW <br><br> ORDER |

Before the Court is Defendant Watchtower Bible and Tract Society of New York, Inc.'s ("WTNY") Motion for Protective Order (Doc. 182) and Plaintiffs Ariane Rowland and Jamie Schulze's Motion to Strike and to Order Depositions Taken as Noticed. (Doc. 194). For the following reasons, the Court denies both motions.

I. **Background**

*A.   October 2022 Motion to Compel*

Plaintiffs sent WTNY a letter dated September 27, 2022, asking to depose Allen Shuster, Gary Breaux, and Gene Smalley ("Deponents"). (Doc. 195-1 at 2). WTNY responded on September 28 that it was "concerned" about the depositions. (Doc. 195-2 at 2). Plaintiffs replied with the deposition notices. (Doc. 195-3).

1

Before WTNY could respond, Plaintiffs moved, in part, to depose the Deponents. (Doc. 131). Plaintiffs argued that the Deponents "have personal knowledge" of the Jehovah's Witness Organization's "practices and policies regarding the handling of child sex abuse allegations going back to the 1970s," which "makes them critically unique witnesses." (Doc. 132 at 7).

WTNY responded that Plaintiffs failed to satisfy their meet and confer obligation. (Doc. 136 at 13-17). WTNY further asserted that the Deponents are protected by the apex doctrine,[1] do not have personal knowledge about the Plaintiffs or their claims, have never been to or communicated with the Montana congregations, and know less about the noticed topics than a 30(b)(6) corporate designee. (*Id.* at 18-19). WTNY also noted that Shuster and Breaux were not corporate officers or executives of WTNY during the alleged abuse. (*Id.* at 18).

The Court denied the motion on April 18, 2023, finding that Plaintiffs had failed to fulfill their meet and confer obligation. (Doc. 176). The Court did not discuss the merits of whether Plaintiffs could depose the Deponents.

---

[1] The deposition of a high-level official or executive is often referred to as an apex deposition. The apex *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (internal citation omitted). To prevent an apex deposition, the opponent of the deposition must first demonstrate that the proposed witness is of "sufficiently high-ranking to invoke the deposition privilege." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal. 2010) (internal citation and quotation omitted). The Court then considers: "(1) whether the witness has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple, Inc.*, 282 F.R.D. at 263.

2

B.  *Post-Order Correspondence on Deposing the Deponents*

On April 19, 2023, Plaintiffs emailed WTNY asking if they would produce the Deponents for deposition and, if not, if they could schedule a time to discuss:

- how WTNY identifies and determines who qualifies as an apex witness;
- who WTNY will produce for depositions in lieu of the Deponents "who have substantially similar personal history and personal knowledge (for all time periods at issue in the case) of the [Jehovah's Witness] Organization's corporate structure, the policies and procedures in place for handling accusations of child sex abuse, how the Service Department communicated with local congregations, and the process for appointment and deletion of elders and ministerial servants"; and
- any reason Plaintiffs should not be permitted to depose Smalley.

(Doc. 195-6 at 2; Doc. 184-1 at 1).

The parties held a conference call on April 25, 2023, to discuss the proposed depositions. Plaintiffs sent WTNY a follow-up email and letter stating that WTNY refused to tell Plaintiffs if it would produce the Deponents for deposition "unless and until" Plaintiffs provided it with deposition notices. (Doc. 184-3; Doc. 184-4 at 1). Plaintiffs explained that the notices would be substantially similar to those sent in September 2022. (Doc. 184-4 at 1). Plaintiffs also contended that WTNY "did not offer any information about" how WTNY determines who qualifies as an apex witness or offer alternative witnesses with a similar personal history and knowledge as Shuster and Breaux. (Doc. 184-3 at 1-2).

WTNY responded on May 1, 2023, that they "were a little surprised at [Plaintiffs'] characterization of the teleconference." (Doc. 184-5 at 1). According

3

to WTNY, the call began with WTNY asking what topics Plaintiffs want to address in the depositions of the Deponents "in order for us to evaluate whether your unilateral designation of these individuals as witnesses with 'personal knowledge' is an attempt to take multiple 30(b)(6) depositions[.]" (*Id.* at 1-2). Since the rules do not allow multiple depositions under Rule 30(b)(6) without leave of the Court, WTNY framed Plaintiffs' deposition as an attempt to make an end-run around the rules. (*Id.* at 2 n.1). WTNY maintained that it repeatedly asked Plaintiffs to identify the proposed topics, but Plaintiffs refused to substantively respond. (*Id.*). WTNY closed the letter asking Plaintiffs notify WTNY by May 2 whether the alternative witnesses were suitable and stating their intent to file a motion for a protective order for the Deponents if Plaintiffs did not agree to the alternates. (*Id.* at 3).

Plaintiffs responded the same day, stating they opposed the alternative witnesses because none of them "have close to the same personal experience and knowledge that [the Deponents] have on issues critical to this case." (Doc. 184-6 at 1). Further, Plaintiffs argued WTNY has not identified any legal authority, including the apex doctrine, which justifies WTNY's "continued obstruction of these depositions." (*Id.*).

WTNY sent a letter to Plaintiffs on May 3, concluding that the parties were at an impasse and that it would file a motion for a protective order once Plaintiffs

4

sent their deposition notices. (Doc. 184-7). In a May 15 letter, Plaintiffs reiterated their disagreement with WTNY and agreed that the parties needed the Court to intervene. (Doc. 184-8).

C. *Current Motions*

WTNY filed its Motion for Protective Order on May 18 to block the depositions of the Deponents. (Doc. 182). WTNY argues a protective order is appropriate because (1) none of the Deponents have personal knowledge of the alleged abuse in the case; (2) a Rule 30(b)(6) designee would be more appropriate to speak to the topics Plaintiffs have expressed interest in, and therefore Plaintiffs' desire to depose the Deponents is actually an attempt to take multiple 30(b)(6) depositions without leave of the Court; (3) Shuster and Breaux are apex witnesses whose deposition cannot be justified; and (4) Smalley is old and not fit enough to be deposed. (Doc. 183 at 2-3).

Plaintiffs reject WTNY's characterization of the scope of the case and the deposition topics. (Doc. 190 at 9-10). According to Plaintiffs, the case is not limited to the instances of the alleged abuse; rather, the case more broadly concerns how Defendants "institute[d] and enforce[d] specific policies requiring Jehovah's Witnesses in Hardin, [Montana] to keep the sexual abuse of Plaintiffs a secret, thereby protecting the abusers while failing to protect the victims." (*Id.* at 9). Thus, what Plaintiffs seek—the Deponents' *personal* knowledge and

5

experience with how the Jehovah's Witness Organization was structured and how it implemented policies related to sexual abuse—speaks to the larger claims about the institution's wrongdoing. (*Id.*). Plaintiffs then describe how each of the Deponents has such knowledge. (*Id.* at 11-16). Plaintiffs also rebut WTNY's application of the apex doctrine to the Deponents generally and as having a preclusive effect on the depositions. (*Id.* at 25-27).

On reply, WTNY argues that Plaintiffs needed to serve subpoenas on the Deponents to depose them because they are non-party witnesses. (Doc. 193 at 2-4). Since Plaintiffs have not served such subpoenas, the depositions should not be held as noticed. (*Id.* at 3). Plaintiffs' attempt to depose the Deponents is improper because none of them are officers, directors, or managing agents of WTNY under Rule 30(b)(1) or 30(b)(6). (*Id.* at 4-5).

Two weeks after WTNY filed its reply, Plaintiffs moved to strike WTNY's non-party/subpoena argument because, according to Plaintiffs, this was the first time WTNY raised it in front of the Court and in correspondence between the parties, in violation of the Court's meet and confer rule and the prohibition on raising new issues on reply. (Doc. 194; Doc. 195 at 3). Plaintiffs maintain that, until then, WTNY only had sought to prevent the depositions on the basis that the Deponents did not have knowledge of the topics relevant to the case and that other witnesses had more knowledge on the topics Plaintiffs noticed. (Doc. 195 at 2-3).

6

Additionally, Plaintiffs question whether WTNY had standing to file for a protective order in the first place if the Deponents are non-parties. (*Id.* at 16 n.4). To remedy WTNY's conduct, Plaintiffs ask the Court to strike WTNY's subpoena argument from its reply and order the depositions taken as noticed. (*Id.* at 16).

WTNY responds that Plaintiffs raised an issue generally related to the subpoenas in their response, so addressing it on reply was proper. WTNY explains that their correspondence with Plaintiffs "focused on certain categories of information Plaintiffs wanted, which were understood in the context of traditional 30(b)(6) topics." (Doc. 196 at 3). That is why, according to WTNY, WTNY "objected at the outset" to the depositions of the Deponents as not the best individuals to provide Plaintiffs with information usually provided by a Rule 30(b)(6) witness. (*Id.*). Further, WTNY contends it "made clear" that the Deponents were non-parties when it told Plaintiffs they were not officers of WTNY at any relevant time. (*Id.*). "That should have been enough information for Plaintiffs' counsel to apply the Rules of Civil Procedure and determine the appropriate course of action for the requested depositions." (*Id.*). Applying such rules, WTNY argues, should have prompted Plaintiffs to either serve subpoenas, or attempt to show that the Deponents were officers or agents who could testify on behalf of WTNY. (*Id.* at 10).

7

On reply, Plaintiffs frame WTNY's actions as a "bait and switch": when it was convenient for WTNY to assert control over the Deponents to arrange and prevent their deposition they did so, yet now they relinquish that control in another attempt to block their depositions. (Doc. 198 at 4). Plaintiffs maintain that their proposed depositions "have always been personal depositions," and that WTNY's argument that it believed they were discussing the depositions in the context of Rule 30(b)(6) "is a fiction of its own making." (*Id.* at 2).

## II. Discussion

Under Federal Rule of Civil Procedure 30(b)(6), a party may name a corporation—here, WTNY—as a deponent. The corporation must then "designate one or more officers, directors, or managing agents ... The persons designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). However, a party can name a particular person to testify on behalf of the organization by noticing the deposition under Rule 30(b)(1). *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 298 F.R.D. 633, 640 (S.D. Cal. 2014). "Rule 30(b)(6) simply gives a party seeking discovery from an organization or government agency the choice either to designate an appropriate individual under Rule 30(b)(1), or describe the subject matter of the questions to be asked and allow the deponent to designate its own spokesperson familiar with the subject matter." *Id.* (quoting 7

8

James Wm. Moore et al., *Moore's Federal Practice* § 30.25[1], at 30-63 (3d ed. 2013)). To depose a non-party, the party seeking the deposition must subpoena them under Rule 45.

Since Plaintiffs' Motion to Strike determines the scope of arguments the Court will consider on WTNY's Motion for Protective Order, the Court will discuss the Motion to Strike first. The core of the parties' dispute on the Motion to Strike is whether WTNY had asserted in the parties' meet and confer that the Deponents are non-parties and Plaintiffs need to serve subpoenas on them, and whether Plaintiffs sufficiently raised the issue in their response to allow WTNY to discuss it on reply. The Court finds that the issue was not discussed in the parties' meet and confer and Plaintiffs did not raise it in their response brief.

Prior to filing a discovery motion, counsel must meet and confer, or attempt to do so, in good faith. Fed. R. Civ. P. 37(a)(1). The parties must "have conferred concerning all disputed issues before the motion is filed," otherwise the Court will deny the motion. D. Mont. L.R. 26.3(c)(1). As this Court has explained:

> The parties must present to each other the merits of their respective positions with the same candor, specificity, and support during informal negotiations as during the briefing of discovery motions. Only after all the cards have been laid on the table, and a party has meaningfully assessed the relative strengths and weaknesses of its position in light of all available information, can there be 'a sincere effort' to resolve the matter.

*Osborne v. Billings Clinic*, CV 14-126-BLG-SPW, 2015 WL 1643379, at *2 (D. Mont. Apr. 13, 2015) (citation omitted). Judicial intervention should only occur

9

when informal negotiations on the disputed substantive issues have reached an impasse, or one party has acted in bad faith by refusing to negotiate or provide specific support for its claims. *Id.*

Additionally, the Court will not consider arguments raised for the first time in a party's reply brief. *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990). "Allowing new issues to be raised in reply unfairly would deny the opposing party a fair chance to respond." *Leisure Concepts, Inc. v. Cal. Home Spas, Inc.*, No. 2:14-cv-388-RMP, 2015 WL 11980975, at *1 (E.D. Wash. Apr. 22, 2015) (internal citation omitted). However, the Court makes an exception when the new issue argued in the reply addresses issues raised in the response brief. *Id.* at *2. The Court has the authority to strike a new issue improperly raised in a reply. *See id.*

Having reviewed the parties' correspondence and the briefing on this motion and the October 2022 motion to compel, the Court finds that WTNY did not argue to Plaintiffs or to the Court until its reply that the Deponents were non-parties on whom Plaintiffs needed to serve subpoenas. The closest WTNY got to such an argument was when it mentioned in an October 5, 2022, letter and its response to Plaintiffs' Motion to Compel that the Deponents were not officers or agents of WTNY at the time of the abuse or, in the case of Shuster and Breaux, currently. (Doc. 195-5; Doc. 160 at 18). This falls short of the meet and confer rule's requirement that the parties "present to each other the merits of their positions with

the same candor, *specificity*, and support," as they would in briefing in front of the Court. *Osborne*, 2015 WL 1643379, at *1 (emphasis added). Instead of leaving it to Plaintiffs to infer the legal import of WTNY's position that the Deponents are not officers or agents of a party, WTNY needed to expressly outline its belief that, because of this fact, Plaintiffs cannot depose them under Rule 30(b)(1) or Rule 30(b)(6) and therefore must subpoena them as non-parties under Rule 45. Such clarity was particularly necessary given WTNY predominately focuses on the Deponents' qualifications to serve as 30(b)(1)/30(b)(6) witnesses, not their ineligibility. Further, that WTNY asserted its stance that the Deponents were not officers or agents of WTNY also undermines its argument that the question of their status as officers or agents was raised for the first time in Plaintiffs' response brief.

Until WTNY's reply, WTNY only argued that Plaintiffs' request to depose them *in effect* amounted to a Rule 30(b)(6) deposition that Plaintiffs would need leave of the Court to take. (*See* Doc. 195-8 at 2, n.1). WTNY also argued that even if Plaintiffs sought leave of the Court, the depositions would not be proper because the Deponents were protected by the apex doctrine and did not have comparable knowledge of the noticed topics as WTNY's suggested alternates.

WTNY's assertion that it understood the depositions only in the context of Rule 30(b)(6) is not supported by the parties' correspondence. (*See* Doc. 196 at 3-6). In the emails and letters in which 30(b)(6) depositions and the depositions of

11

the Deponents are discussed, each topic is addressed in separate paragraphs set apart either by the discussion of an unrelated issue or by clear transitional language. (*E.g.* Doc. 195-2 at 2 (WTNY discussing staggering 30(b)(6) witness depositions, then depositions of Plaintiffs, then depositions of the Deponents, each in separate paragraphs); Doc. 195-3 (Plaintiffs discussing depositions of the Deponents, then, in a separate paragraph beginning with, "As it pertains to the depositions of WTNY," discusses the 30(b)(6) depositions); Doc. 195-5 at 2 (WTNY addressing depositions of the Deponents and staggering the 30(b)(6) deposition in separate paragraphs)). Plaintiffs also stated they were noticing the depositions under Rule 30(b)(1) (Doc. 195-7 at 2), yet WTNY never flagged that it did not understand the depositions as pursuant to Rule 30(b)(1), let alone clarified that the Deponents cannot be deposed under either rule because they are not officers or agents of WTNY.

WTNY's Motion for Protective Order affirms the Court's conclusion. In its brief, WTNY admits it knows Plaintiffs are not seeking 30(b)(6) depositions: "Plaintiffs claim that Shuster, Breaux, and Smalley are not 30(b)(6) witnesses in this lawsuit. That much is right – WTNY has not designated them." (Doc. 183 at 8). WTNY continues: "But … the very topics Plaintiffs want to depose [the Deponents on] are the same as those about which WTNY's designated 30(b)(6) witness would testify." (*Id.* at 8-9).

By asserting the Deponents are non-parties and Plaintiffs need to serve subpoenas to depose them, WTNY undermines the entire basis for its motion for protective orders. If the Deponents are non-parties, WTNY does not have standing to seek a protective order on their behalf. 8A Richard Marcus, *Federal Practice & Procedure* § 2035 (3d ed. 2023) ("A party may not ask for an order to protect the rights of another party or witness if that party or witness does not claim protection for himself."). Rather, the Deponents would have to move to intervene to block their depositions. *Id.*

In short, Plaintiffs' characterization of WTNY's conduct as a bait and switch is accurate. Until the reply brief, WTNY represented that it controlled the Deponents and that Plaintiffs needed to go through WTNY to depose them. Then, in its reply, WTNY asserts that the Deponents are non-parties and Plaintiffs have to serve subpoenas on them, instead of working through WTNY. As Plaintiffs posited, if WTNY's stance all along was that it was not going to designate the Deponents as 30(b)(6) witnesses, that the Deponents are not eligible for 30(b)(1) status because they are not officers of WTNY, and that the Deponents are non-parties on whom Plaintiffs needed to serve subpoenas, then why did they ever exercise such control? Since WTNY does not answer this question, the Court can only infer that it sought to gatekeep access to the Deponents however possible. But WTNY cannot have it both ways, and such conduct violates WTNY's duty of

candor to the Court, as well as to Plaintiffs. *See* Model R. Pro. Conduct r. 3.3[4] (Am. Bar Ass'n 2023); D. Mont. L.R. 83.2(a); *Osborne*, 2015 WL 1643379, at *1.

As for the appropriate remedy, the Court does not find that striking the non-party/subpoena argument from WTNY's reply to the Motion for Protective Order and ordering the depositions taken as noticed is correct. As to the request to strike, the Court concludes it should not ignore an argument that negates the basis for the motion in the first place. As to the order deeming the depositions taken as noticed, if the Deponents are in fact non-party witnesses—which Plaintiffs have not rebutted—then declaring them party witnesses under 30(b)(1) would require WTNY to exercise control over persons they cannot legally control. Because the Court does not agree with the remedy proposed by Plaintiffs in their Motion to Strike, the Court must deny it. The Court emphasizes that its denial is as to the remedy only and that it agrees entirely with the basis for the motion.

Given that WTNY's reply undermined the entire basis for its Motion for Protective Order, the Court finds denying the motion on the grounds that WTNY did not have standing to file it is appropriate. Because the Court denies the motion on standing grounds, it will not consider its substantive arguments.

### III. Conclusion

The Court has issued ad nauseum reprimands to the parties and reminders of the parties' obligations to engage in discovery in good faith. (*See e.g.* Docs. 72,

14

120, 176, 186). For WTNY to act in bad faith here despite the Court's repeated rebukes is unacceptable and justifies the Court's conclusions herein.

IT IS HEREBY ORDERED that Defendant Watchtower Bible and Tract Society of New York, Inc.'s ("WTNY") Motion for Protective Order (Doc. 182) is DENIED and Plaintiffs Ariane Rowland and Jamie Schulze's Motion to Strike and to Order Depositions Taken as Noticed is DENIED. (Doc. 194).

DATED the 29th day of September, 2023.

SUSAN P. WATTERS
UNITED STATES DISTRICT JUDGE